IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARLOS E., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Civil Action No. 7:18-CV-337 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Carlos E. ("Carlos") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Carlos alleges that the ALJ failed to assess his impairments on a function-by-function basis and failed to provide sufficient reasons for discounting his subjective allegations. Carlos also asserts that additional evidence submitted to the Appeals Council warrants remand. I conclude that substantial evidence supports the ALJ's decision. Accordingly, I **RECOMMEND DENYING** Carlos' Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Carlos failed to demonstrate that he was disabled under the

1

Act.[1] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Carlos filed for SSI on August 21, 2013, claiming that his disability began on September 15, 2011. R. 332. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 380–402. On March 15, 2017, ALJ Joseph T. Scruton held a hearing to consider Carlos's disability claim. R. 348–79. Carlos was represented by an attorney at the hearing, which included testimony from Carlos and vocational expert Mark Heilman. <u>Id.</u>

On July 17, 2017, the ALJ entered his decision analyzing Carlos's claim under the familiar five-step process,[2] and denying Carlos's claim for benefits. R. 332–40. The ALJ found that Carlos suffered from the severe impairments of cervical myelopathy; status-post neck injury;

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); <u>Taylor v. Weinberger</u>, 512 F.2d 664, 666 (4th Cir. 1975).

mild to moderate degenerative disc disease of the lumbar spine; hypertension; and status-post fusion of the cervical spine. R. 334. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 334–35.  The ALJ further found that Carlos had the residual functional capacity ("RFC") to perform light work, except that he can occasionally reach, handle, and finger with the right dominant upper extremity; frequently, but not constantly, reach, handle, and finger with the left non-dominant upper extremity; never crawl or climb; and occasionally stoop, crouch, and kneel. R. 335. The ALJ determined that Carlos is unable to perform his past relevant work of assembly production but was capable of performing other jobs found in the national economy such as usher, conveyer line bakery worker and rental consultant. R. 339.  Thus, the ALJ determined that Carlos was not disabled. R. 339–40.

Carlos requested that the Appeals Council review the ALJ's decision and submitted over three hundred pages of medical records to the Appeals Council in support of his claim. R. 8–328. On June 6, 2018, the Appeals Council denied Carlos's request for review. R. 1–8.  This appeal followed.

## ANALYSIS

Carlos challenges the ALJ's decision on two grounds, claiming: (1) the ALJ failed to perform a function-by-function analysis when he developed Carlos's RFC; and (2) the ALJ failed to provide a sufficient explanation to discount his subjective allegations with regard to his pain and limitations.  Carlos also asserts that the additional evidence provided to the Appeals Council is new, material and relevant to the issues before the ALJ and warrants remand of the case. The issue before me is whether the ALJ applied the correct legal standards and whether his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699

3

F.3d 337, 340 (4th Cir. 2012). Having reviewed the record, I find that the ALJ's decision satisfies the substantial evidence standard.

## **Function-by Function Analysis**

Carlos asserts that the ALJ failed to consider how his impairments affect his ability to work on a function-by-function basis. Specifically, Carlos asserts that the ALJ failed to sufficiently explain the basis for the upper extremity manipulative limitations in the RFC and failed to make specific findings regarding whether he can maintain a static work posture, must lie down during the day, and would require breaks or absences from work due to pain. Pl. Br. Summ. J. p. 14–15.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence that contradicts the RFC determination. See SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).[3] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p.

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

4

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Carlos sought treatment for back pain after feeling a "pop" in his back at work in 2011. R. 584. During the relevant period in this case (beginning in 2013), Carlos complained of pain and weakness in his neck, upper extremities and lower extremities. R. 643. His treatment included epidural steroid injections and pain management. In March 2017, Carlos underwent an anterior cervical discectomy and fusion procedure on C5/6 and 6/7. R. 905. Post-surgery, Carlos continued to complain of pain, although he was healing nicely, had a steady gait, full strength in his arms, and intact sensation. R. 898.

The ALJ reviewed the records and provided a summary and analysis of Carlos's impairments, medical records, testimony, and opinion evidence. R. 335–38. The ALJ discussed Carlos's symptoms, his resulting limitations, the medical evidence, the medical opinions, Carlos's testimony, and the conflicting medical evidence. Id. The ALJ considered Carlos's testimony that his impairments prevent him from performing basic work-related tasks; and that he has difficulty sleeping, managing personal care, lifting, squatting, bending, standing, reaching,

5

walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using his hands, and getting along with others. R. 335, 362–73, 530–37. The ALJ found that Carlos's impairments could reasonably be expected to produce his alleged symptoms; however, Carlos's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence of record. R. 336.

The ALJ reviewed the medical evidence in detail, noting that Carlos had a work-related injury to his lumbar spine in 2011, and that subsequent imaging revealed multiple spondylotic and discogenic changes to his cervical and lumbar spine between 2011 and 2015. In March 2017, Carlos had surgery on his cervical spine. Id. The ALJ also noted that Carlos previously underwent multiple rounds of steroid injection therapy and physical therapy but continued to report significant symptoms. Id.

The ALJ noted that during physical examinations, Carlos presented with findings consistent with his diagnoses, including tenderness to palpation, positive trigger points in his lumbar spine, decreased range of motion in the neck, sensory deficits and weakness in the right upper extremity, pain on range of motion of the lumbar spine, positive bilateral straight-leg raise testing, muscle spasms in the neck, decreased grip strength, weakness in the upper and lower extremities, an antalgic gait and a positive Hoffman's sign[4] bilaterally. Id. (citing records).

The ALJ thus found many of Carlos's complaints to be consistent with his underlying impairments. However, the ALJ also found inconsistencies in the record, causing him to question the veracity of Carlos's subjective allegations. The ALJ noted that Carlos reported that

---

[4] Hoffman's sign is a test that doctors use to examine the reflexes of the upper extremities to test for the possible existence of spinal cord compression or another underlying nerve condition. See https://www.medicalnewstoday.com/articles/322106.php.

he helps care for his son, manages his personal care, prepares meals daily, performs light housework, goes outside several times weekly, goes shopping, manages his finances, watches television, spends time with others, and attends family events. R. 337, 530–37.  The ALJ also noted that Carlos routinely had normal physical examinations with normal strength, gait, and range of motion. R. 337.  The ALJ referenced EMG studies showing no evidence of peripheral neuropathy in 2011, no evidence of upper extremity radiculopathy in 2013, and no abnormalities of Carlos's lumbar spine in 2015. Id.  Finally, the ALJ noted that Carlos's post-surgical notes from April 2017 indicate that he was doing well with multiple improvements after the surgery. R. 337, 897–99.

       The ALJ reviewed the opinions of state agency physicians Donald Williams, M.D. and Gene Godwin, M.D., which both found Carlos capable of performing light work. R. 385–86, 397–98. The ALJ gave the opinions little weight, finding that they lacked necessary restrictions regarding Carlos's upper extremities. R. 337.  The ALJ also gave little weight to a medical evaluation form completed by Glendora Raplee, N.P., stating that Carols would be unable to work for six months beginning in July 2013. R. 769–71. The ALJ found that the form did not reference adequate objective medical findings to support its conclusions. R. 338.  Considering the record as a whole, including Carlos's cervical myelopathy, previous neck injury, degenerative disc disease of the lumbar spine, hypertension, and fusion of the cervical spine, the ALJ determined that Carlos can perform a limited range of light work with additional exertional restrictions as set forth in the RFC. R. 338.

       Carlos asserts that the ALJ's decision lacks an explanation as to how the ALJ arrived at the conclusion that he can perform light work with occasional reaching, handling and fingering with the right upper extremity and frequent reaching, handling and fingering with the left upper

extremity. Pl. Br. Summ. J. p. 15. In his decision, the ALJ noted that Carlos's physical examinations revealed "sensory deficits in the right upper extremity," "mild weakness in the right upper extremity," and "weakness in the upper and lower extremities." R. 336. The ALJ also noted that Carlos reported symptoms including "bilateral neck and periscapular pain with radiation into the right upper extremity, numbness and tingling in the right upper extremity, weakness in the upper extremities, and ambulatory difficulties." R. 337. The ALJ reviewed the opinions of state agency physicians Drs. Williams and Godwin, and gave them slight weight, specifically noting that "the state agency medical consultants did not find the claimant to have any limitations in the upper extremities, which is inconsistent with multiple physical examinations in the record." R. 337. The ALJ then noted that based upon the complete record, consideration of medical opinions in the record and Carlos's testimony, he found that Carlos could perform light work with the upper extremity manipulative limitations set forth in the RFC.

The ALJ's discussion of Carlos's complaints and physical findings relating to limitations in his upper extremities, all of which indicated that his right upper extremity was more limited than his left, sufficiently supports the ALJ's decision to limit Carlos to occasional manipulative activities with his right upper extremity and frequent manipulative activities with his left upper extremity. Notably, no medical provider found that Carlos required manipulative restrictions in either of his upper extremities; however, the ALJ determined that such restrictions were warranted based upon Carlos's report of symptoms and his physical examination findings.

Carlos asserts that the ALJ must include a more fulsome discussion of why he included these manipulative limitations in the RFC; however, the duty of explanation does not require that an ALJ set forth detailed reasoning for each finding in his decision; rather, it requires an explanation such that the Court can sufficiently determine how the ALJ arrived at his

8

conclusions and whether those conclusions are supported by substantial evidence. Mascio, 780 F.3d at 637; see also Hutson v. Berryhill, No. 2:18CV01383, 2019 WL 2030541, at *18 (S.D.W. Va., April 2, 2019) ("[T]he additional objective evidence simply did not support Claimant's allegations of manipulative limitations. In short, the ALJ's finding that Claimant's alleged symptomatology was not supported by the objective evidence was sufficient explanation for the [Court] that allows for meaningful judicial review. This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary." (internal citations omitted)); Jividen v. Colvin, 2014 WL 1333196, at *6 (S.D.W. Va. 2014) ("[T]he ALJ's decision includes detailed discussion of the medical evidence and states Plaintiff's functional limitations. Moreover, the ALJ explained why he did not believe that the functional limitations recommended by Dr. Viridia were necessary, based on the objective medical evidence in the record. This constitutes a sufficient function-by-function assessment."); Vandervort v. Astrue, No. CIV.A. TMD10–02671, 2013 WL 508987, at *2 (D. Md. Feb. 11, 2013) ("While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings.").

     Carlos also asserts that he cannot maintain a static work posture and must lie down during the day. Pl. Br. Summ. J. p. 15. Carlos asserts that the ALJ failed to make "specific findings regarding whether plaintiff's impairments would cause him to experience episodes of pain necessitating breaks or absences from work and how often these would occur and the impact on his ability to perform work related activities." Pl. Br. Summ. J. p. 16. In support of his allegation that he cannot maintain a static work posture and must have breaks or absences from work, Carlos relies upon his medical records documenting progressive back pain with right lower

9

extremity radiculopathy since 2011. Id. Carlos asserts that the records document diminished sensation in his lower extremities, frequent incontinence, and pain in his neck and arms. Id. at 15–16.

Carlos alleges that the ALJ's analysis of his limitations was inadequate but cites no opinion or other evidence in the record to support additional specific limitations more significant than those imposed by the ALJ. Further, the ALJ is not required to make specific findings related to every subjective assertion by Carlos, including his claims that he must lie down during the day and is unable to maintain a static work posture. "[T]he ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." Smith v. Colvin, No. 12–1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Carlos's alleged symptoms, and the medical opinions of record. R. 336–38. This discussion allows the Court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. "The threshold for [substantial evidence] is not high." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019). The reviewing court looks for sufficient evidence in the record to support the conclusion. The ALJ's conclusion that Carlos retains the RFC to perform a limited range of light work was rationally reached by the ALJ's analysis of the evidence in the record. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

## Assessment of Plaintiff's Allegations

Carlos asserts that the ALJ failed to provide a sufficient explanation to discount his subjective allegations with regard to his pain and limitations. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's assessment of a claimant's statements, except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, Carlos raises several specific issues with the ALJ's analysis of his subjective complaints. First, Carlos disputes the "inconsistencies" referred to by the ALJ between Carlos's

11

subjective statements and the record evidence. Pl. Br. Summ. J. p. 17. After reviewing the medical records and subjective complaints, the ALJ stated, "[d]espite the partial evidentiary support for the claimant's impairments, the record contains a number of inconsistencies, which call into question the veracity of the claimant's subjective allegations." R. 337. The ALJ then noted Carlos's ability to perform a wide variety of daily activities, his routinely normal physical examinations; the findings of his objective studies; and the post-surgical notes indicating that Carlos was doing well overall. Id.

Carlos points to specific portions of his imaging studies and progress notes that contradict the ALJ's conclusions to support his argument that the ALJ erred. For example, the ALJ mentioned an EMG that showed no evidence of mechanical instability, but Carlos notes that it showed multi-level degenerative disc disease. R. 337, 875–77. The ALJ also discussed progress notes indicating that Carlos was doing well with multiple improvements since surgery, but those notes also document his complaint of ongoing pain in his arms. R. 337, 897–99. These arguments are not persuasive. The ALJ was aware of and documented Carlos's multi-level degenerative disc disease and complaints of ongoing upper extremity pain. When analyzing the medical evidence, the ALJ is not required to re-state every medical finding that supports and contradicts his conclusions, but rather, must simply provide a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Carlos's alleged symptoms, and the medical opinions of record. Monroe, 826 F.3d at 188.

Carlos asserts that it was improper for the ALJ to cite his inconsistent work history when assessing his subjective allegations because he was incarcerated from 2002 through 2008. Pl. Br. Summ. J. p. 17–18. Carlos also alleges that it was improper for the ALJ to find that his history

12

of only heavy work "detracts from a viable medical basis for an inability to perform work at a lesser level of exertion." R. 337. The ALJ is required to consider a claimant's work history in combination with the evidence of record. "In determining a claimant's RFC, the ALJ must consider all presented evidence when evaluating a claimant's symptoms, including "information about [the claimant's] past work record." Hunter v. Berryhill, No. 3:17cv112(DJN), 2018 WL 310138, at *14 (E.D. Va. Jan 5, 2018) (citing 20 C.F.R. § 404.1529(c)(3)). "Various district courts have acknowledged that the ALJ should take work history into account and that a robust work history strengthens a claimant's credibility." Id. at *14. Here, the ALJ properly considered Carlos's intermittent work history of only heavy work and indicated that it did not reflect an inability to perform a limited range of light work.

Carlos also asserts that the ALJ failed to consider whether he can perform the daily activities cited for eight hours a day, as required in a work setting. Carlos points to Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017), to support his argument that the ALJ fails to acknowledge that the activities Carlos cited were performed on a limited basis. However, this case is distinguishable from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the claimant's daily activities of living. 873 F.3d at 263. Here, unlike in Brown, the ALJ pointed to more than Carlos's daily activities to discount Carlos's testimony at the hearing, including the record of his treatment and objective medical evidence. Also, unlike the ALJ in Brown, the ALJ here did not mischaracterize the other medical evidence, rely on evidence contradicted by the record, rely on a medical opinion that conflicted even with the ALJ's own determinations, nor reject the "consistent opinions of [five] treating and examining sources." Brown, 873 F.3d at 266. In short, while in Brown there were numerous errors compounding the ALJ's failure to accurately

13

describe the extent of the claimant's daily living activities, the same problems do not exist in this case so as to undermine the substantial evidence supporting the ALJ's decision. Further, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Carlos's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929. The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Carlos's subjective complaints with substantial evidence.

**Additional Evidence**

As an alternative to his request that the court reverse the Commissioner's decision in this case, Carlos requests that the court remand this case to the Commissioner to consider new evidence submitted to the Appeals Council after the ALJ's decision. Pl. Br. Summ. J. p. 20–22. The additional records are dated March 30, 2017 through April 21, 2018. R. 8–328. The records reflect Carlos's continued complaints of neck and radicular pain, a second cervical surgery on November 30, 2017 (R. 256), and complaints of pain, numbness and tingling from Carlos's arms to his fingers (R. 23).

14

The Appeals Council denied Carlos's request for review, stating that the medical records from Carilion Clinic Neurosurgery dated April 13, 2017 through December 14, 2017 and Carilion Clinic-Roanoke Memorial Hospital dated March 30, 2017 through December 2, 2017 do not show a reasonable probability that they would change the outcome of the decision. R. 2.  The Appeals Council found that the evidence from Carilion Clinic Neurosurgery dated January 10, 2018 through April 21, 2018 do not relate to the period at issue. Id.

The "Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (internal quotations omitted). Beginning on January 17, 2017, a claimant seeking Appeals Council review based on additional evidence must also demonstrate good cause for not informing the agency about or submitting the evidence at an earlier stage. See 20 C.F.R. 404.970(b), 416.1470(b). Here, the ALJ's decision was issued in July 2017, thus Carlos must also show good cause for not submitting these records to the Appeals Council.

Evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96. However, the Appeals Council need not review or consider new evidence that relates only to a period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011) ("Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that 'an express analysis of the Appeals Council's

15

determination would [be] helpful for purposes of judicial review.') (citation omitted); see also Riley v. Apfel, 88 F.Supp.2d 572, 579–80 (W.D. Va. 2000) ("When this court is left in the dark as to how the Appeals Council treated the new evidence a meaningful review is impossible."). When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

Carlos asserts that these new records are new, material and relevant because they confirm that he was not doing well following his March 2017 cervical surgery and subsequently had to undergo additional cervical surgery in November 2017. Carlos also argues that these additional records provide further corroboration of his allegations regarding the severity of his impairments. Pl. Br. Summ. J. p. 21.

Several of the records submitted are duplicative of records that were before the ALJ. See R. 45, 115, 121, 175. Of those that are not duplicative, records dated prior to the ALJ's decision in June 2017 reflect that Carlos reported ongoing cervical and shoulder pain, but his physical examination revealed full symmetric strength in his upper and lower extremities, normal muscle bulk and tone, normal gait and normal sensation.[5] R. 56. Carlos continued to seek treatment for cervical pain and underwent a cervical epidural injection in July 2017. R. 193. In August 2017, his physical examination again reflected full strength and range of motion in his upper and lower extremities, normal muscle bulk and tone, normal gait and normal sensation. R. 63–64.

---

[5] Carlos did not provide the required "good cause" as to why records dated prior to the ALJ's decision were not provided to the ALJ. Indeed, Carlos simply states, "good cause exists for not submitting the evidence when the case was before the ALJ as the evidence did not exist at that time." Pl. Br. Summ. J. p. 22.

16

In November 2017, Carlos underwent a C3–5 decompression and C6/7 foraminotomies. R. 250.  In January 10, 2018, six weeks after his second cervical surgery, his doctor noted "patient being seen for complaints of cervical pain that has improved with surgery." R. 12.  Upon physical exam, Carlos's upper and lower extremity strength were full and symmetric, his muscle bulk and tone were normal, he walked without a limp, and his sensation was symmetric to touch and pinprick his upper and lower extremities. R. 15.  In February 2018, Carlos returned to the neurosurgery clinic stating that "a cop attempted to put patient's hands behind his back in an arrest when he felt his neck 'tweak." He has significant pain and decreased ROM [range of motion] since then." R. 23.

Carlos does not provide any reasoning to the Appeals Council or in his briefing to the Court to support a finding of good cause for his failure to provide the records dated prior to July 2017 to the ALJ.  Further, the records from July 2017 through April 2018 do not warrant remand because there is no reasonable probability they would change the outcome of the decision.

Specifically, Carlos's records from July 2017 through November 2017, the five months after the ALJ's decision, reflect ongoing symptomatology of the same conditions from which Carlos suffered during the relevant period. The records reflect that Carlos suffered from cervical and shoulder pain, but his physical exams did not reveal any additional limitations that would reduce the limited functional capacity assessed by the ALJ.  Indeed, these additional records reflect the same functional limitations that the ALJ acknowledged in his decision and accommodated in the RFC.  The ALJ noted that Carlos's physical examinations during the relevant period revealed decreased range of motion in the neck, sensory deficiencies in the right upper extremity, pain on range of motion of the lumbar spine, mild weakness in the right upper extremity, muscle spasms in the neck, decreased grip strength, and weakness in the upper and

17

lower extremities. R. 336.  Likewise, Carlos's records dated June 2017 through November 2017 reflect complaints of cervical pain and shoulder pain, full and symmetric strength in bilateral upper extremities, normal muscle bulk and tone, and symmetric sensations to touch and pinprick in the bilateral upper extremities. R. 56, 61, 73, 83.  Thus, although Carlos required a second surgery four months after the ALJ's decision, his records leading up to the November 2017 surgery and shortly after the surgery do not reflect a change in his functional capacity.

Post-surgery, in January 2018, Carlos's provider noted "complaints of cervical pain that has improved with surgery" (R. 12), and Carlos again had full and symmetric strength in his upper extremities, normal muscle bulk and tone, and symmetric sensation to touch and pinprick in his upper extremities. R. 15.  However, on February 21, 2018, Carlos reported a change in his condition after a "cop attempted to put his hands behind his back in an arrest when he felt his neck 'tweak.'  He has had significant pain and decreased ROM [range of motion] since then." R. 23. In April 2018, Carlos complained of chronic and severe cervical pain and arm pain.  On exam, Carlos's strength showed some give-way weakness. R. 37. These records dated after February 2018 reflect a subsequent exacerbation in Carlos's condition such that his complaints no longer relate back to the relevant period before the ALJ's decision.  In situations where a claimant's health worsens after the ALJ's decision, either due to a progressive condition or a stable condition with a sudden decline, the proper recourse is to file a new application.  Accordingly, the new evidence presented provides no reason for remand.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend affirming the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Carlos's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

Entered: June 24, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge